## Case No. 17,308.

WEAVER v. ALTER et al.

[3 Woods, 152.] [1]

Circuit Court, D. Louisiana.   April Term, 1878.

EQUITY PRACTICE — CROSS BILL BETWEEN CO-DEFENDANTS—MORTGAGES—ANNULMENT OF TAX SALE.

1. A controversy between co-defendants to a bill in equity cannot be the matter of a cross-bill, unless its settlement is necessary to a

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

complete decree upon the case made by the original bill.
   [Distinguished in Gregory v. Pike, 29 Fed. 590.]

2. The annulment by decree of court of a tax sale of premises mortgaged to secure notes held by different parties, inures to the benefit of all such holders, and not solely of the holder at whose suit the decree was made.

3. Where, according to the jurisprudence of Louisiana, property mortgaged to secure several notes has been sold, at the suit of the holder of one of the notes, for a sum insufficient to discharge the entire mortgage debt, and he has been paid his pro rata share of the proceeds of sale, the purchaser takes the property subject to the lien of the mortgage which secures the pro rata share of the other holders of notes. In such case, the prescription of one of such notes does not inure to the benefit of the other holders of notes secured by the mortgage. The pro rata share of each note holder is unaffected thereby.

In equity. Heard for final decree upon pleadings and evidence.

The bill was filed by the complainant (Daniel Weaver], who was the holder of one of the notes secured by a mortgage, to recover from the purchasers of the mortgaged property, who had become such at a sale ordered by the court in a suit to enforce the mortgage, his share of the purchase price, and to assert his lien therefor on the mortgaged premises.

The facts were as follows: The complainant and respondents [Charles E. Alter and others] each held one or more promissory notes which were secured by a common mortgage upon the Ormond plantation, a plantation situated in the parish of St. Charles, in this state. The common mortgage was executed in the year 1871. Subsequently the mortgaged property was sold for taxes to Henry Shepherd. Within the period allowed for redemption of property sold for taxes, Alter, one of the respondents, tendered to Shepherd the amount paid by him at the tax sale, with the fifty per centum of interest, which amount Shepherd refused to receive. Thereupon, Alter instituted a suit against Shepherd to annul the tax sale on account of certain irregularities, and, as owner, to redeem. The supreme court of this state (Alter v. Shepherd, 27 La. Ann. 208) held the sale regular, but on account of the seasonable tender of Alter, who they held, as one of the mortgagees, came within the meaning of the term owner, decreed that the tax sale should be annulled and vacated. Alter then as holder of the notes secured by mortgage, obtained judgment and caused the mortgaged property to be seized under an execution, by the sheriff of the parish of St. Charles and sold. At this sale Alter became purchaser of a large portion of the mortgaged property, and Mrs. McLean, the other respondent, of the remaining portion. The property brought at this sale $24,205. Mrs. McLean, one of the respondents, filed a cross-bill, in which she alleged that the price of the portion of the mortgaged property which she bought was not equal to the amount of the whole price, which, upon a pro rata division, would come to her,

and she sought to recover the deficiency from her co-defendant Alter. To this cross-bill both the complainant and the respondent Alter demurred. One of the promissory notes secured by the common mortgage, it was alleged, had become prescribed since the sheriff's sale, though it was not contended that it had become prescribed prior thereto.

Both the complainant and the defendant, Mrs. McLean, insisted that the prescription of this note should inure to their benefit, and thus increase ratably the amount of the realized price to which they were entitled as co-mortgagees.

J. D. Rouse and Wm. Grant, for complainant.

T. J. Semmes, Armand Pitot. M. M. Cohen, Jos. P. Hornor, and W. S. Benedict, for defendants.

BILLINGS, District Judge. The questions presented for decision arise on the cross-bill, and relate to the effect of the redemption from the tax sale by Alter, and the effect of the alleged prescription of the non-presented note.

First. Is the matter set up by way of cross-bill, properly matter of a bill not original? The most precise definition of a cross-bill which I have been able to find in the text-books, is in Coop. Eq. Pl. p. 85. "A cross-bill," says he, "is a bill which ex vi terminorum implies a bill brought by a defendant in a suit against a plaintiff respecting the matter in question in that bill." But sometimes it is brought against the co-defendants in such depending suit, where they have opposite claims which the court cannot determine in such depending suit upon the bill filed, and the determination of such clashing interests is still necessary to a complete decree upon the subject matter of the suit. But in such last mentioned case, the original plaintiff must be named a defendant, together with the defendants in the first cause. See, also, to the same effect, Story, Eq. Pl. §§ 392, 396; Wright v. Miller. 1 Sandf. Ch. 123; Galatian v. Erwin, 1 Hopk. Ch. 48; Shields v. Barrow, 17 How. [58 U. S.] 145; Cross v. De Valle. 1 Wall. [68 U. S.] 14; Ayres v. Carver, 17 How. [58 U. S.] 594 and 595, and Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 809, 810. Now, the matter of the complainants' suit here is to recover, with privilege, so many dollars and so many cents from the defendant Alter as his ratable proportion of the price of the portion of mortgaged property bought by him, and from defendant Mrs. McLean, a fixed sum as the ratable proportion of the price of the portion of the mortgaged property bought by her. The subject matter of the cross-bill is a settlement between these two defendants of the balance due from one to the other, resulting from the price severally paid, and to be paid by them, as compared with the respective amounts of their mortgaged notes. With this accounting the complainant has no sort of interest. It could not at all affect his rights, nor qualify the decree in his favor. It has no more to do with the case, as presented by him, than would a cross-bill between defendants whom he had sued as members of an ordinary partnership for their virile share of a debt due by a partnership, where one defendant should interpose a cross-bill asking, as against a co-defendant, an accounting with reference to all the partnership affairs. The fact that both defendants are citizens of the state of Louisiana, would prevent the court having jurisdiction over the controversy presented by it, viewed as an original bill. As a cross-bill, it must fall, as presenting nothing which is necessary to a complete decree upon the subject matter of the complainant's case. The obligation of the defendant Mrs. McLean to the complainant, became distinct from that of her co-defendant when each concluded a purchase of a portion of the mortgaged land at the sheriff's sale, and he cannot be made to be embarrassed by any accounting between them.

Secondly. As to the effect of the proceedings by the defendant Alter to annul the tax sale. Precisely what this proceeding was appears in the statement of the case by the supreme court, in Alter v. Shepherd, 27 La. Ann. 208. They say the plaintiff, as holder of several promissory notes secured by mortgage, sues to annul a tax sale of the mortgaged property and a subsequent sale thereof by the purchaser, on the grounds of alleged defects and informalities in the tax sale, collusion therein in the second sale, and his right as mortgagee to redeem the land, which he alleges he offered to do according to law within the legal delay."

The court then proceed to discuss the question whether Alter, the plaintiff in that suit, as mortgagee, came within the meaning of the term "owner" as used in the statute of 1873, and decide that he did, and that, as owner, he was entitled to redeem, and decree "that the tax sale and all subsequent sales of said property be annulled upon Alter paying to Shepherd the amount of the tax, with the additional penalty of 50 per cent imposed by the statute; that Alter have judgment against the maker of the notes for $33,750 (the amount of the mortgage notes held by him), with interest, with vendor's privilege and mortgage." I think this decree interprets itself. It annuls the tax sale and the subsequent sale which still further conveyed the property, upon the refunding by the mortgagee of the amount of tax and penalty, and gives judgment for the amount of the notes secured by the common mortgage held by Alter, with vendor's privilege. They have simply vacated the tax conveyance, leaving the property subject to whatever privilege and mortgage were upon it prior to the execution of the conveyance. They have not increased or diminished the extent of Alter's privilege. Of course equity will require that the amount paid by Alter, which inured to the benefit of himself and his co-mortgagees, with the interest, should first be re-imbursed to him out of the proceeds of the mortgaged property, but with that exception the relative rights of the parties secured by the common mortgage

remain unchanged. Indeed, had the supreme court designed to make their decree inure to the benefit of Alter solely, they would have decreed, not the annulment of the conveyance, but a conveyance from the tax sale purchaser or his transferee to Alter.

It was urged that the rule prescribed by the Civil Code, arts. 1970 and 1977, which direct that, in case the revocatory suit brought by a judgment creditor to annul a contract made by his debtor in fraud of his rights, is maintained, that the property which was the subject of the contract should be applied to the judgment of the plaintiff. But these articles provide for the revocation of the fraudulent contract only so far as relates to its effects upon the complaining creditor. The mortgagee in this case had no right in equity to have a preference over his co-mortgagees. Nor did the decree of the supreme court give him any. It annulled the sale, and that cancellation operated necessarily in aid not only of the plaintiff in the suit, but of all parties holding concurrent mortgages. The suit of Alter v. Shepherd, supra, was not a suit under these articles of the Code, but a suit to enforce the rights of Alter to redeem, as an equitable owner, under the law regulating the sale of land for taxes. When viewed as such an action, it gave the plaintiff only the right to redeem for himself and his co-mortgages.

Thirdly. It is urged, both by the complainant and the respondent Mrs. McLean, that one of the notes for the sum of $5,000, secured by the common mortgage, has, since the sheriff's sale, become extinguished by prescription, and that this fact should to that extent reduce the mortgage and ratably increase the amounts coming to them respectively. The theory of the law as to the effect of a judicial sale provoked by one of several parties holding concurrent mortgages is, that the sale does not extinguish the other mortgages created by the same act and at the same date. If the mortgaged property does not bring enough to satisfy in full all the concurrent mortgagees. the sheriff should collect the pro rata share of the seizing creditor, and the portion coming to the other mortgagees should be left in the hands of the purchaser, subject to their call and secured by their mortgages. Pepper v. Dunlap, 16 La. 163, and Scott v. Featherston, 5 La. Ann. 306. If, then, as in this case, the property brought less than enough to satisfy the common mortgage so far as the purchaser is concerned, after paying to the seizing creditor his pro rata of the proceeds of the sale, he would assume a debt to each of the other holders of the mortgage notes equal to his pro rata share of the proceeds, who, from the time of the sale, has, as against the purchaser and the property in his hands, a claim secured by his mortgage for a sum thus judicially ascertained. If, after the sale, extinguishment of one of the mortgage notes takes place, the same effect is wrought, so far as relates to the purchaser, as would be brought about if he had purchased property subject to an indivisible claim secured by a mortgage. The extinction of the claim would extinguish the mortgage. Grayson v. Mayo, 2 La. Ann. 927. So here, if one of these notes secured by the common mortgage has, since the sheriff's sale. been extinguished, it has not affected the claims or privileges which the other holders of similar notes have against the property or purchaser. Had there been no sale, the extinction of one of the notes by prescription would have inured to the benefit of the holders of the others. But the intervention of a third person under a judicial sale, with liabilities fixed by the sale, prevents. so far as he is concerned, that result. The pro rata share of each holder of the mortgage notes remains unaffected. In the language of the supreme court, in Scott v. Featherston, supra, "the portion coming to the other mortgage creditors would, in that case, remain in the hands of the purchaser, subject to their call and secured by their mortgages."

As to the defense set up by the respondent Alter in his answer and cross-bill, that the complainant, as pledgee, cannot recover, I think, according to the proofs and under the law of Louisiana, it cannot be maintained.

The demurrers to the cross-bill of the respondent Mrs. McLean must be sustained, and the complainant must have a decree against the respondents Alter and Mrs. McLean, severally, for the pro rata share of the price of the portion of the mortgaged property purchased by them respectively, with interest, less the amount as against the respondent Alter of his payment to effect the redemption, with the addition of expenses and interest.