### NEWTON v. GAGE et al.

### NORTHERN COUNTIES INV. TRUST, Limited, v. GAGE et al.

(Circuit Court, S. D. California, S. D. August 5, 1907.)

#### No. 1,211.

1. COURTS—JURISDICTION OF FEDERAL COURTS—CROSS-BILL BY INTERVENER.

The bringing in of a new party in a suit in a federal court by cross-bill or otherwise, when the presence of such party as an original defendant would have defeated federal jurisdiction, violates both the constitutional and statutory requirement as to diverse citizenship, and the court is without jurisdiction to entertain a cross-bill by an intervener who could not have been made a party to the original bill, unless such intervener represents an interest already before the court or claims an interest in property of which the court holds possession.

[Ed. Note.—Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. MORTGAGES—FORECLOSURE BY SUIT—CROSS-BILL.

A junior mortgagee, in order to foreclose his own mortgage, cannot, under general rules of equity pleading and practice, by cross-bill or otherwise, make himself a party to a suit brought for foreclosure of a prior mortgage.

3. EQUITY—CROSS-BILL—BRINGING IN NEW PARTIES.

Under the general rules of equity pleading and practice, new parties cannot be introduced into a cause by cross-bill.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 467.]

In Equity. On demurrer to cross-bill and motion to strike out cross-bill.

John G. North and Hunsaker & Britt, for complainant.
J. S. Chapman and Purington & Adair, for defendants.
M. B. Kellogg, for interveners.

WELLBORN, District Judge. This is a bill by Thomas Henry Goodwin Newton, a subject of Great Britain, against Matthew Gage and Jane Gage, citizens of California, to foreclose a mortgage on real

estate. By leave of the court, the Northern Counties Investment Trust, Limited, also a British subject, intervened and filed its cross-bill against the said defendants for the foreclosure of a junior mortgage, also making Walter Powell, likewise a subject of Great Britain, a defendant to the cross-bill. The original defendants, Matthew Gage and Jane Gage, have demurred to, and also interposed a motion to strike out, the cross-bill, and the present hearing is on said demurrer and motion. The other facts will appear further on in the opinion.

The grounds of objection to the cross-bill, raised by demurrer and also by a motion to strike out, seem to be three in number and as follows: First. That, aligning the Northern Counties Investment Trust, Limited, and Walter Powell as codefendants with Matthew Gage and wife, which alignment all parties agree is the proper one, federal jurisdiction is thereby ousted, because the resulting situation presents Newton, an alien, on one side, and the Northern Counties Investment Trust, Limited, and Powell, both aliens, on the other side of the case. Second. That the foreclosure of cross-complainant's junior mortgage is in no way a matter of defense to the foreclosure of complainant's first mortgage, but a distinct and independent cause of action, and, therefore, not the subject of a cross-bill. Third. That a cross-bill could not be filed by the Northern Counties Investment Trust, Limited, nor against Walter Powell, even if the original complainant and each of the two parties just named were citizens of different states, for the reason that both of said parties are strangers to the original bill. These objections will be noticed in the order of their statement.

First. That the bringing in of a new party, by cross-bill or otherwise, when the presence of such party as an original defendant would have defeated federal jurisdiction, violates both the constitutional and statutory requirement as to diverse citizenship, is expressly held in Shields v. Barrow, 58 U. S. 130, 15 L. Ed. 158, wherein the court says:

"It is apparent that, if it were in the power of a Circuit Court of the United States to make and enforce orders like this, both the article of the Constitution respecting the judicial power, and the act of Congress conferring jurisdiction on the Circuit Courts, would be practically disregarded in a most important particular. For in all suits in equity it would only be necessary that a citizen of one state should be found on one side, and a citizen of another state on the other, to enable the court to force into the cause all other persons, either citizens or aliens. No such power exists; and it is only necessary to consider the nature of a cross-bill to see that it cannot be made an instrument for any such end. * * * When the defendants, Mrs. Shields and Bisland, had complied with the order of the court, and filed their cross-bill, as it was called, against the other indorsers and Thomas R. Shields, and they had come in, as they did, what was their relation to the cause? They surely were not plaintiffs in it. If they were defendants the court had not jurisdiction, for they, as well as the complainant, were citizens of Louisiana. In truth, they were not parties to the original bill. They were merely defendants to the cross-bill. They had no right to answer the original bill, or make defense against it, and of course no decree could be made against them upon that bill. We do not find it necessary to pursue further an examination, in detail, of the complicated maze of pleas, demurrers, answers, amendments, and interlocutory orders, which followed the filing of this so-called cross-bill. It is enough to say that the defendants to it were never lawfully before the court; that the court never obtained jurisdiction over those

of the parties who were citizens of the state of Louisiana, and amongst them was Thomas R. Shields, who, though made a party to the original bill by amendment, as a citizen of Mississippi, pleaded that he was a citizen of Louisiana, and was thereupon stricken out of the original bill, and was only a defendant to the cross-bill."

From appellant's brief in that case, on the point decided by the court in the foregoing extract from its opinion, I quote as follows:

"On what ground is the jurisdiction of the Circuit Court of the United States to determine a controversy between citizens of Louisiana to be maintained? The only authority cited by complainant's counsel is Story Eq. Pl. § 392, and authorities there cited. This authority is not at all in point. It only refers to a question of pleading in equity, relating to cross-bills, but does not touch the question of jurisdiction. * * * The device used in this case is perfectly transparent, and, if successful, converts the federal courts into courts of unlimited jurisdiction, regardless of the citizenship of the parties. It requires no argument to show that the original bill could not possibly be sustained for want of proper parties. A bill to set aside an agreement for canceling the sale of property could not be entertained without the presence of the two parties to the sale and agreement to cancel. But the court was without jurisdiction between these two parties, who were both citizens of Louisiana, and the bill should have been dismissed on its face. Instead of this, the defendants, citizens of Mississippi, having a common interest with these citizens of Louisiana, were forced, in spite of their protest, and under duress of the process of the court, to file a bill against their codefendants, not for their own benefit, but in order to help the complainant to get a judgment against themselves and against the codefendants."

The authority of Shields v. Barrow, although the opinion of the court has been subjected to criticism in another particular, has never been challenged, as far as I know, on the point now under consideration. The following extracts from defendants' brief are in line with the doctrine declared in Shields v. Barrow, and show its direct application to the case at bar, namely:

"This cross-bill relates solely to another mortgage upon a part of the same property and seeks to foreclose that mortgage. If it had brought such a suit in this court for the same purpose originally, it is obvious that the court would have no jurisdiction. Any defense which the original defendants should make to this cross-bill must necessarily be foreign to the original bill; for in any controversy existing between the Northern Counties Investment Trust, Limited, and the original defendants, is a controversy which does not concern the plaintiffs, and is not necessary to a complete decree on the original bill. If the Northern Counties Investment Trust, Limited, had been brought into this suit originally, in what capacity must it have appeared? It could not have been a coplaintiff with Newton, and must necessarily have been made a party defendant. If it had been a party defendant, the jurisdiction of the court would be ousted, and the jurisdiction of a court cannot be called into action by such a simple contrivance as a plaintiff's leaving out of his bill one who insists that it ought to have been a party defendant, then permitting that party to come in as an intervener, and then to file a cross-complaint whereby others who ought to have been parties to the original bill are brought into court, and the jurisdiction saved by this roundabout device. The maxim by which courts of equity are controlled no one denies. Their anxiety to make an end of litigation in one suit where that is possible, its reluctance to litigation by piecemeal, are all well understood principles and highly commendable. But those same principles are recognized by the state courts as fully as they are by the federal courts in equity. And this court is not inclined to draw to itself jurisdiction in cases where it does not rightfully attach by reason of, or through the application of, these principles, when there was nothing to hinder the invocation of those same principles in the state-

·courts and where the objection to the jurisdiction on the ground of the citizen-ship of the parties would not have existed."

I have examined carefully and in detail the authorities cited in complainant's brief to his contention that interventions, bringing in new parties, do not oust federal jurisdiction, no matter what be the citizenship of the parties thus introduced, and find that each one of them is an exceptional case, easily harmonized with Shields v. Barrow, supra.

In Sioux City Terminal R. & W. Co. v. Trust Co. of N. A., 82 Fed. 124–126, 27 C. C. A. 73, the mortgaged property was in the custody of the court, as shown by the following extract from the opinion, at page 128 of 82 Fed. (27 C. C. A. 73) :

"When the banks had been dismissed, the Circuit Court had jurisdiction of the subject-matter and of the parties to the suit. It also had the possession of the mortgaged property, which was then in the hands of the receiver."

This statement of the court as to the possession of the mortgaged property, which is not set forth in complainant's quotation of part of the same paragraph, distinguishes said case widely from Shields v. Barrow, and brings it within the exception above noted, that possession by the court of property in litigation carries with it jurisdiction to determine the rights of every person who claims an interest therein, and to that end brings before it all parties necessary to a full determination of the issues without regard to their citizenship. This jurisdiction does not depend upon diverse citizenship, but grows out of the judicial possession of the property and the resulting duty which such possession unavoidably imposes upon the court to afford suitable relief to persons, who, on account of its action in acquiring the property would otherwise be remediless. The grounds of this rule and its supporting authorities will be further noticed later on.

The other cases cited by complainant in this connection are either analogous in principle to Sioux City Terminal R. & W. Co. v. Trust Co. of N. A., supra, or are cases where the interests represented by the new parties were identical with those of one or more of the original parties, and were therefore already involved in the suit.

Thus, in Phelps v. Oaks, 117 U. S. 236, 6 Sup. Ct. 714, 29 L. Ed. 888, an action for the recovery of real estate, the tenant was the original party and the landlord was the new party, and upon this state of facts the court said:

"It is equally an error to assume that plaintiffs had not a substantial and real controversy with the defendant Oaks, and that their controversy was solely with the Zeidlers. The object and purpose of the action was to recover possession of the real estate in the visible and actual occupation of Oaks, and not otherwise in the possession of his landlord, than by force of his tenancy. The Zeidlers were not citizens of Missouri, nor residents of the district, and could not have been sued by the plaintiffs. The latter were not bound to look beyond the person who, by his occupation of the disputed premises, was holding adversely to their claim ; and if the Zeidlers were permitted to defend, it was for their own interest, and not because they were either necessary or indispensable parties to the proceeding in which the plaintiffs were the actors. The controversy, so far as the Zeidlers were interested in it, was of their own seeking, and, as their rights could not be concluded by a judgment against the tenant, they were not in a position to insist that the plaintiffs should forego their legal right to proceed against the most convenient defend-

ant. The landlord could defend the possession of the tenant, as it was his right and duty to do on notice of the action, but he could do so as well in the name of the tenant as in his own. At any rate, the plaintiffs had a right to eject the defendant, who actually and unlawfully withheld from them possession of their lands; and it is not correct to say that the controversy in law is with the landlord in virtue of whose claim of title the wrongful possession is maintained. Much less can the plaintiff's right to prosecute his action in the courts of the United States, once vested, be defeated by imposing upon him an adversary against whom he cannot maintain the jurisdiction of these tribunals. * * * It was quite proper, therefore, for the Circuit Court to admit the landlord as a party, for the purpose of defending his tenant's possession, and, through that, his own title; and to this end he might not only be permitted to appear as a party to the record and codefendant, but to control the defense as dominus litis, raising and conducting such issues as his own rights and interests might dictate. And this need not arrest or interfere with the jurisdiction of the court, already established by the plaintiffs against the tenant in possession. For such proceedings should be treated as incidental to the jurisdiction thus acquired, and, auxiliary to it, as in like cases, in equity, one interested in the subject-matter, though a stranger to the litigation, may be allowed to intervene pro interesse suo. Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145."

Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163, 29 L. Ed. 329, was a creditors' bill, "filed on behalf of the complainants and all other creditors who might come in and share the costs of the litigation," and the court said:

"The right of the court to proceed to decree between the appellants and the new parties did not depend upon the difference of citizenship, because, the bill having been filed by the original complainants on behalf of themselves and all other creditors choosing to come in and share the expenses of the litigation, the court, in exercising jurisdiction between the parties, could incidentally decree in favor of all other creditors coming in under the bill. Such a proceeding would be ancillary to the jurisdiction acquired between the original parties, and it would be merely a matter of form whether the new parties should come in as co-complainants, or before a master, under a decree ordering a reference to prove the claims of all persons entitled to the benefit of the decree. If the latter course had been adopted, no question of jurisdiction could have arisen. The adoption of the alternative is, in substance, the same thing."

Another familiar instance of the introduction of new parties without ousting the jurisdiction of the court is that of the death of an original party and the substitution of his personal representative. In such a case federal jurisdiction remains undisturbed, no matter what be the citizenship of the new party, for the reason that the interest represented by said party was already before the court in the person of the deceased.

Hardenburgh v. Ray, 151 U. S. 112, 14 Sup. Ct. 305, 38 L. Ed. 93, like Phelps v. Oaks, supra, was ejectment, and the court held, quoting from the syllabus, that, "when the jurisdiction of a Circuit Court has fully attached against the tenant in possession in an action of ejectment, the substitution of the landlord as defendant will in no way affect that jurisdiction, although he may be a citizen of the same state with the plaintiff."

Freeman v. Howe, 65 U. S. 450–460, 16 L. Ed. 749, so far as pertinent here, is only an earlier assertion of the doctrine of Sioux City Terminal R. & W. Co. v. Trust Co. of N. A., supra, and the same is

true of Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145.

In this last case, the court gave a clear exposition of the rule that a court in possession of property has jurisdiction to determine all claims thereto, regardless of the citizenship of the parties, as follows:

"It has been sometimes said that this statement was obiter dictum, and not to be treated as the law of the case; but it was, in point of fact, a substantial part of the argument in support of the judgment, and, on consideration, we feel bound to confirm it in substance as logically necessary to it. For if we affirm, as that decision does, the exclusive right of the Circuit Court in such a case to maintain the custody of property seized and held under its process by its officers, and thus to take from owners, wrongfully deprived of possession, the ordinary means of redress by suits for restitution in state courts, where any one may sue, without regard to citizenship, it is but common justice to furnish them with an equal and adequate remedy in the court itself which maintains control of the property, and, as this may not be done by original suits, on account of the nature of the jurisdiction as limited by differences of citizenship, it can only be accomplished by the exercise of the inherent and equitable powers of the court in auxiliary and dependent proceedings incidental to the cause in which the property is held, so as to give to the claimant, from whose possession it has been taken, the opportunity to assert and enforce his right. And this jurisdiction is well defined by Mr. Justice Nelson, in the statement quoted, as arising out of the inherent power of every court of justice to control its own process so as to prevent and redress wrong. * * *

"No one, even in equity, is entitled to be made or to become a party to the suit unless he has an interest in its object (Calvert on Parties, 13); yet it is the common practice of the court to permit strangers to the litigation, claiming an interest in its subject-matter, to intervene on their own behalf to assert their titles.

"'When any person,' says Mr. Daniel, Chancery Practice, c. 26, § 7, p. 1057, 'claims to be entitled to an estate or other property sequestered, whether by mortgage or judgment, lease, or otherwise, or has a title paramount to the sequestration, he should apply to the court to direct an inquiry whether the applicant has any and what interest in the property sequestered. This inquiry is called an examination pro interesse suo; and an order for such an examination may be obtained by a party interested, as well where the property consists of goods and chattels or personalty as where it is real estate. Thus, in Martin v. Willis, 1 Fowl. Ex. Pr. 160, a person claiming title to goods seized under a sequestration, obtained an order for an examination pro interesse suo, and in the meantime that the goods might be restored to him on his giving security.'

"The same practice prevails in cases where property is put into the hands of a receiver. Daniel, Ch. Pr. c. 39, § 4, p. 1744. The grounds of this procedure are the duty of the court to prevent its process from being abused to the injury of third persons, and to protect its officers and its own custody of property in their possession, so as to defend and preserve its possession except by leave of the court.

"So the equitable powers of courts of law over their own process to prevent abuse, oppression, and injustice are inherent and equally extensive and efficient, as is also their power to protect their own jurisdiction and officers in the possession of property that is in the custody of the law (Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257; Hagan v. Lucas, 10 Pet. 400, 9 L. Ed. 470); and when in the exercise of that power it becomes necessary to forbid to strangers the restoration of property in that situation, as happens when otherwise conflicts of jurisdiction must arise between courts of the United States and of the several states, the very circumstance appears which gives the party a title to an equitable remedy at law, and the question of citizenship, which might become material as an element of jurisdiction in a court of the United States when the proceeding is pending in it, is obviated by treating the intervention of the stranger to the action in his own interest, as what Mr.

Justice Story calls, in Clarke v. Mathewson, 12 Pet. 164, 172, 9 L. Ed. 1041, a 'dependent bill.' "

This Krippendorf Case is referred to approvingly in a later case, as follows:

"The jurisdiction of the Circuit Court did not depend upon the citizenship of the parties, but on the subject-matter of the litigation. The property was in the actual possession of that court, and this drew to it the right to decide upon the conflicting claims to its ultimate possession and control. Minnesota Co. v. St. Paul Co., 2 Wall. 609, 17 L. Ed. 886; People's Bank v. Calhoun, 102 U. S. 256, 26 L. Ed. 101; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Morgan's Co. v. Texas Central Ry. Co., 137 U. S. 171–201, 11 Sup. Ct. 61, 34 L. Ed. 625."

Central Trust Co. v. Bridges, 57 Fed. 753, 6 C. C. A. 539, so far as concerns the point now under consideration, is simply an earlier declaration of the same doctrine.

Society of Shakers v. Watson, 68 Fed. 730, 15 C. C. A. 632, is simply in line with Phelps v. Oaks, supra, Stewart v. Dunham, supra, and Hardenberg v. Ray, supra, and, at page '736 of 68 Fed., page 638 of 15 C. C. A., the doctrine of the case is epitomized thus:

"Permitting a party to intervene in a pending suit to represent an interest involved does not oust the jurisdiction of a federal court already acquired by reason of the diverse citizenship of the original parties, of whatever state the intervenor may be a citizen. Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163, 29 L. Ed. 329; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Phelps v. Oaks, 117 U. S. 236, 6 Sup. Ct. 714, 29 L. Ed. 888; Osborne v. Barge (C. C.) 30 Fed. 805. We think, therefore, that the jurisdictional objection founded on the citizenship of the parties is not well taken."

In Tug River Coal & Salt Co. v. Brigel, 86 Fed. 818, 30 C. C. A. 415, from which complainant quotes the first paragraph of the syllabus, there were two plaintiffs, one a citizen of New York and the other a citizen of Ohio, while the defendant was a citizen of Kentucky. After the commencement of the action the New York plaintiff changed his citizenship to Kentucky, and it was with reference to that change, set up in a plea to the jurisdiction, that the court held, as set forth in the first paragraph of the syllabus, quoted in complainant's brief, that "the citizenship which determines the jurisdiction of a federal court is that which existed at the time of commencement of the suit, and subsequent changes can neither divest nor confer jurisdiction." There were no new parties added, and yet the language quoted might well apply, in the absence of the facts with reference to which the language was used, to changes of parties. This case clearly illustrates and strongly emphasizes the fact that, in order to correctly understand a decision, it must be read in connection with the facts, upon which it was rendered, and particularly is this true of complainant's citations upon the point now under consideration. In most of these citations, the opinions of the court, unless the facts of each case are comprehended with accuracy and kept steadily in mind, are subject to serious misconstruction.

The distinction between Shields v. Barrow, supra, and Krippendorf v. Hyde, supra, and the numerous cases in line with the latter, has been indicated as follows:

"In the way attempted in the present case, there are no pleadings on behalf of the original plaintiff as against Kemp Van Ee, and could be none. The whole basis of making him a party defendant was in the allegations of Swift's answer. This practice, although prevailing in some localities, is condemned, by necessary implication, in Shields v. Barrow, 17 How. 130, 145, 15 L. Ed. 158, by Justice Bradley, in 1873; in Searles v. Railroad Co., 2 Woods 621, 625, Fed. Cas. No. 12,586; by Justice Blatchford, in 1868, in Drake v. Goodridge, 6 Blatchf. 151, Fed. Cas. No. 4,062; and in the notes to Daniell, Ch. Prac. (6th Am. Ed.) 286, 287. * * * This question of making defendants is entirely different from that of an intervention pro interesse suo, as authorized in Harrison v. Nixon, 9 Pet. 483, 540, 9 L. Ed. 201, Krippendorf v. Hyde, ubi supra, and in Morgan's L. & T., etc., Co. v. Texas Cent. R. Co., ubi supra, and in the notes to Daniell Ch. Prac. (6th Am. Ed.) 1853. There seems to be no doubt that, under the authority of these cases, Kemp Van Ee would have been entitled to an intervention by summary petition after the fund came into the registry of the court in equity, and to thus maintain his interest. This, however, would have been an essentially different proceeding from that of making parties to the main controversy, and would have been of the character of the intervention of Mr. Talbot in the case at bar. This question has no relation to the so-called 'class suits,' nor to the coming in of a cestui que trust or a stockholder, nor to cases like White v. Hall, 1 Russ. & M. 332, where new parties come into the accounting after a decree. In none of these are the issues presented by the bill substantially changed by the interposition of the new parties." Gregory v. Pike, 67 Fed. 845, 15 C. C. A. 33.

The foregoing review of complainant's citations removes any apparent lack of harmony between them and Shields v. Barrow, and, accepting all of said cases as authoritative here, the conclusion necessarily results that a new party cannot be brought into a suit, whose presence at its commencement would have defeated federal jurisdiction, unless such party represents an interest already before the court, or claims an interest in property of which the court holds possession. Nor is this conclusion at all antagonized by Lilienthal v. McCormick, 117 Fed. 96, 54 C. C. A. 475. There the cross-complainant, Bank of Woodburn, was an original defendant, and, even after the filing of the cross-bills, the citizenship of each of the defendants, under a proper alignment, was different from that of both complainants. So, whatever use may be made of that case as a precedent on other points, it certainly is not an authority to the proposition that a cross-bill may introduce a new party, although the citizenship of said party be the same as that of the complainant, for the simple reason that the last-mentioned fact was not in the case.

Furthermore, it is worthy of note that the defendants to the original bill had paid into court the sum of $1,063, and I am not sure but that this fact brings the case within the principle enunciated in the numerous cases already cited, that possession by the court of the property in litigation carries with it jurisdiction to determine all claims thereto. It is true that the court at page 96 of 117 Fed. (54 C. C. A. 475) used this language: "Consolidations, cross-bills, and interventions do not oust the jurisdiction of the court in the main suit, whatever the citizenship of the parties thus brought in may be"; but, since there was neither a consolidation nor an intervention in that case, the words "consolidations" and "interventions" are without application. While there were cross-bills, yet, as I have already shown, the citizenship of the parties thereto was diverse to that of the complainants, and of course federal jurisdiction was not ousted. More-

over, the clause above quoted is obviously but the statement of a general principle, and its limitations are to be found in the authorities from which the principle is deduced. The three cases cited in said clause are all cases where the property in litigation was in possession of the court. Two of them, Sioux City Terminal R. & W. Co. v. Trust Co. of North America, and Morgan's Co. v. Texas Central R. Co., I have already noticed. The third, Park v. Railroad Co. (C. C.) 70 Fed. 641, is entirely in line with the other two, as shown by the following extract from the opinion, at page 642:

"Having acquired jurisdiction of the property, and having appointed receivers with the express consent of the defendant railroad, the court does not lose jurisdiction when other persons interested therein come in, and are made parties, even though some of them be citizens of the same state with those whose interests in the same property are adverse to the intervenors; for, when property is in the actual possession of a federal circuit court, this draws to it the right to decide upon conflicting claims as to its ultimate possession and control."

In Osborne & Co. v. Barge (C. C.) 30 Fed. 805, the decision was rested on the ground that, inasmuch as the alleged ownership of the intervenor went to the validity of the mortgage sought to be foreclosed, therefore the cross-bill was ancillary to the original suit, as appears from the second paragraph of the syllabus, which is as follows:

"Where a suit to foreclose a chattel mortgage is properly cognizable in a court of equity, a party who claims to be the owner of a part of the property mortgaged may intervene in the suit, although he would have a remedy by action at law, and in such case the court will have jurisdiction of the proceeding in his behalf as ancillary to the original suit."

While it does not appear that the mortgaged property had been sequestered, yet the court cites in support of its ruling Freeman v. Howe, Krippendorf v. Hyde, and Phelps v. Oaks. The first of these three cases lends little support to the decision, and I presume that it was rested upon a real or supposed analogy to the last two cases, in each of which the court had actual possession of the property. If the decision cannot be sustained on this theory, then it is in conflict with Shields v. Barrow, and cannot be accepted as an authority here. Mercantile Trust Co. v. A. & P. R. R. Co. (C. C.) 70 Fed. 518, is clearly in line with Krippendorf v. Hyde, supra, and Morgan's Co. v. Texas Central Ry. Co., supra. Indeed, the latter case is cited and quoted from in support of the court's ruling.

In order to avoid any mistake about the matter, the learned jurist who delivered the opinion, Judge Ross, carefully reiterates four or five times, as the ground of his decision, the court's possession of the mortgaged property, as appears from the following quotation:

"All of the property covered by both mortgages that is situated within this judicial district having been taken by the court into its possession by means of receivers, for the benefit of all parties concerned in it, in accordance with their respective rights, I am unable to see any valid reason why every right sought to be enforced by the United States Trust Company by the bill it seeks to bring may not be set up and enforced in the suit brought by the Mercantile Trust Company, to which it is already a party. Having the actual possession of all of the property of the Atlantic & Pacific Railroad Company situated within this judicial district that is covered by the first mortgage to the United States Trust Company, as well as by the second mortgage to the

Mercantile Trust Company, there is surely no good reason why the court may not, in the one suit, ascertain and determine how much is due on the first mortgage and how much is due on the second, and decree a sale of the mortgaged property to pay, after discharging the necessary and proper expenses of the receivership, first, the amount due upon the first mortgage, and, next, that due upon the second mortgage, with the proper judgment or judgments over against the mortgagor for any deficiency that may be found to exist. The fact that three foreign corporations, namely, the Atchison, Topeka & Santa Fé Railroad Company, the St. Louis & San Francisco Railway Company, and the Boston Safe-Deposit & Trust Company, are made parties defendant to the proposed bill, and are not parties to the suit brought by the Mercantile Trust Company, is unimportant, first, because by the bill the United States Trust Company asks leave to bring, no relief is asked against those corporations; and, second, if there was, since the rights of the United States Trust Company grow out of contracts with respect to the subject-matter already in the possession and control of the court, that possession draws to the court having it the right to decide upon every conflicting claim to its ultimate disposition and possession that may be held or asserted by either of those corporations. Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 201, 11 Sup. Ct. 61, 34 L. Ed. 625, and cases there cited. They can be brought into the suit of the Mercantile Trust Company just as easily as they can be made parties to the suit the United States Trust Company seeks to bring. The court itself may, and always would, order them brought in if they should at any time, pending the suit, appear to be necessary parties to its proper determination. Nor is any good reason perceived why the United States Trust Company, in setting up its rights under its first mortgage in the suit of the Mercantile Trust Company, may not bring them into that suit, if it is entitled to any relief against them in connection with the mortgaged property."

The jurisdiction of a court, as I have already shown, growing out of its possession of the property in litigation to determine all conflicting claims thereto, necessarily carries with it the right to bring in every party whose presence is necessary to a full disposition of the case, without regard to citizenship, and Judge Ross was unquestionably correct, when, referring to the bringing in of new parties, under the peculiar facts before him, he said: "The court may, and always would, order them brought in if they should at any time pending the suit appear to be necessary parties to its proper determination."

I am fully satisfied that the cross-bill was improperly filed and ought not to stand, for the reason that federal jurisdiction would be thereby ousted. While this conclusion is, of itself, sufficient to dispose of the pending hearing, still, since the other two grounds of the demurrer and motion have been largely discussed in the briefs of both parties, and each is a separate and independent objection, which, if good, calls for dismissal of the cross-bill, I will present briefly the views I entertain of both grounds.

Second. Assuming, then, for the purposes of the two objections yet to be considered, and contrary to what I have just held, that the intervention of the Northern Counties Investment Trust, Limited, did not oust federal jurisdiction, and that the intervenor is properly before the court, I come next to the question whether or not the foreclosure of a junior mortgage is the proper subject of a cross-bill in a suit brought for the foreclosure of a prior mortgage. The rule, established by an overwhelming current of authorities, is that the grounds for the affirmative relief sought in a cross-bill must grow out of the transaction on which the original complainant sues.

A cross-bill is defined as follows:

"The cross-bill is a bill brought by a defendant in a suit against the complainant in the same suit, or against the other defendants in the same suit, or against both, touching the matters in question in the original bill." 1 Beach on Modern Equity Practice, § 421.

The same author says:

"A cross-bill will be dismissed with costs, where it seeks no discovery, and makes no defense which was not equally available by way of answer to the original bill, or by amendments to the answer." 1 Beach on Modern Equity Practice, § 422.

Another text-writer defines a cross-bill as follows: ·

"A cross-bill is a bill filed by a defendant in a suit in equity against one or more of the other parties, in order to obtain, either discovery of facts in aid of his defense, or complete relief to all parties as to the matters charged in the original bill." 1 Foster's Fed. Prac. § 169.

The expositions of cross-bill given by the courts are in line with the definitions above quoted.

The Supreme Court has said:

"A cross-bill is brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. It is brought either to obtain a discovery of facts, in aid of the defense to the original bill, or to obtain full and complete relief to all parties, as to the matters charged in the original bill. It should not introduce new and distinct matters not embraced in the original bill, as they cannot be properly examined in that suit, but constitute the subject-matter of an original, independent suit. The cross-bill is auxiliary to the proceeding in the original suit, and a dependency upon it." Ayres v. Carver, 58 U. S. 591–594, 15 L. Ed. 179.

Again, it has been said:

"The office of a cross-bill is either to warrant the grant of affirmative relief to the defendant in the original suit, to obtain a discovery in aid of the defense in that suit, to enable the defendant to interpose a more complete defense than that which he could present by answer, or to obtain full relief to all parties, and a complete determination of all controversies which arise out of the matters charged in the original bill. The fact that a cross-bill fairly tends to accomplish either of these purposes is generally a sufficient ground for its interposition. It must seek equitable relief, but, subject to this qualification, a complainant who has brought a defendant into a court of equity in order to subject him to an adjudication of his rights in a certain subject-matter cannot be heard to say that there is no equity in a cross-bill which seeks an adjudication of all the rights of the parties to the original suit in the same subject-matter. The issues raised by the cross-bill must be so clearly connected with the cause of action in the original suit that the cross-suit is a mere auxiliary or dependency upon the original suit, but, subject to this qualification, new facts and new issues may properly be presented by a cross-bill." Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 26 C. C. A. 389.

To the same effect is the following extract:

" 'A cross-bill,' says Mr. Justice Story (Eq. Plead. § 389), 'ex vi terminorum, implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. A bill of this kind is usually brought, either (1) to obtain a necessary discovery of facts in aid of the defense to the original bill, or (2) to obtain full relief to all parties, touching the matters of the original bill.' And, as illustrative of cross-bills for relief, he says (§ 392): 'It also frequently happens, and particularly, if

any question arises between two defendants to a bill, that the court cannot make a complete decree without a cross-bill or cross-bills to bring every matter in dispute completely before the court to be litigated by the proper parties and upon the proper proofs.'" Morgan's Co. v. Texas Central Ry. Co., 137 U. S. 200, 11 Sup. Ct. 61, 34 L. Ed. 625.

The late Justice Miller held, quoting from the first paragraph of the syllabus:

"A cross-bill will be sustained in the federal court, where a defendant is compelled to avail himself of that mode of defense, in order to protect himself from an injustice resulting to him from the position in which the cause stands, although the parties plaintiff and defendant, or some of them, are citizens of the same state; provided the defendants in such bill are already before the court, and are, as parties to the original bill, subject to its jurisdiction." Schenck v. Peay, 21 Fed. Cas. 667, Case No. 12,450.

This case is cited approvingly by Justice Harlan in Jesup v. Illinois Central Ry. Co. (C. C.) 43 Fed. 483–496.

Again, the rule that a cross-bill must relate to the transactions set up in the original bill has been declared as follows:

"If it be true that Vannerson and Leverett are both citizens of Georgia, the one can have in this court no relief against the other in a cross-bill filed to an original bill against them both, which he could not have obtained by original bill here. In other words, the fact that they are both sued in one bill here does not confer any power on them to litigate their controversies inter sese in this court. Most clearly, if the plea is true, Vannerson had no standing in this court as a suitor by original bill. He prays no relief against Bates, Reed & Cooley. His cross-bill has no relation to the subject-matter of their suit, nor is this cross-bill in any sense a reply to allegations of the original bill. The Circuit Court of the United States is limited in its jurisdiction, and, when it does not obtain, it is an inflexible rule that the judicial power of the United States must not be exerted, even if both parties desire to have it exerted." Vannerson v. Leverett, 31 Fed. 377.

Again, it has been held, quoting from the syllabus:

"A controversy between codefendants to a bill in equity cannot be a matter of a cross-bill, unless its settlement is necessary to a complete decree upon the case made by the original bill." Weaver v. Alter, 29 Fed. Cas. 486, Case No. 17,308.

Again, it has been said:

"A cross-bill is like an original bill, except that it must rest on what is necessary to the defense of an original bill." Brandon Mfg. Co. v. Prime, 4 Fed. Cas. 19, Case No. 1,810.

This last case, of which I shall have more to say later on, is the one in which Judge Wheeler challenges as dictum the statement of Justice Curtis in Shields v. Barrow, that "new parties cannot be introduced into a cause by a cross-bill."

Osborne & Co. v. Barge (C. C.) 30 Fed. 805, does not antagonize, but is in accord with the views I have above expressed, so far as concerns the relation, which the cause of action set up in the cross-bill must bear to that set up in the original bill. In that case, which was a suit to foreclose a chattel mortgage, the cross-complainant claimed to be the owner of a part of the property in controversy, and thus stated a defense to the foreclosure sought in the original bill, the court holding, quoting from the third paragraph of the syllabus, that "in such a case the party claiming the property need not have put

his claim into judgment before filing his cross-bill, as he already has such an interest in the property as will enable him to question the validity of the mortgage."

Lilienthal v. McCormick, supra, is not an authority on the point now under consideration, because there a dispute existed as to the amount due the original complainants and to that extent the cross-bill of the Bank of Woodburn was an attack upon the mortgage of said complainant, and thus a part of the transaction on which the original complainant sued. Referring to this point, the court, at page 95 of 117 Fed. (54 C. C. A. 475), says:

"It is true that, if no suit had been brought by the complainants, the Bank of Woodburn could have brought suit in the state court to enforce its liens and obtain full relief, but it was properly made a defendant by complainants, and having been brought into the suit in the United States court it had the right to assert its claims and seek affirmative relief by filing a cross-bill for the foreclosure of its liens and it had the right in such suit to litigate the question whether the complainants had any lien against the property for damages."

Mercantile Trust Co. v. A. & P. R. R. Co., supra, is likewise wholly inapplicable here, for the reasons given in a previous reference to that case.

A careful review of the authorities satisfies me that a junior mortgagee, in order to foreclose his own mortgage, cannot, under general rules of equity pleading and practice, by cross-bill or otherwise, make himself a party to a suit brought for foreclosure of a prior mortgage. That there may be no misconstruction of this conclusion I will add that the words "under general rules of equity pleading and practice" are used to save the exception which arises when the court has possession of the mortgaged property.

Third. The third ground which defendants urge in support of their demurrer and motion, namely, that "new parties cannot be introduced into a cause by a cross-bill," is unquestionably supported by Shields v. Barrow, supra, and it will be observed, that, in stating this ground, I have employed the precise language used by the Supreme Court in that case.

Shields v. Barrow has been referred to approvingly in Connolly v. Wells (C. C.) 33 Fed. 205–207; Ayres v. Carver, 58 U. S. 591–595, 15 L. Ed. 179; Randolph v. Robinson, 20 Fed. Cas. 262, Case No. 11,561; Adelbert College W. R. U. v. Toledo, etc., Ry. Co. (C. C.) 47 Fed. 836–846; Toler v. East Tenn. V. & G. R. Co. (C. C.) 67 Fed. 168–170; Gregory v. Pike, 67 Fed. 837–845, 15 C. C. A. 33; and Thruston v. Big Stone Gap I. Co. (C. C.) 86 Fed. 484, 485. And, in Ayres v. Carver, 58 U. S., at page 594, 15 L. Ed. 179, the Supreme Court said:

"A cross-bill is brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. * * * The office of a cross-bill has been very fully discussed at this term by Mr. Justice Curtis in the case of Victor Shields et al., v. Barrow; and I need not, therefore, pursue it, but refer only to that opinion for the true doctrine on the subject."

Nor does the authority of Shields v. Barrow seem to have been anywhere questioned, until, after the lapse of nearly a quarter of a

century, District Judge Wheeler, sitting in the Circuit Court, refers to it as "the remark of Mr. Justice Curtis in Shields v. Barrow," and further says: "That precise question was not involved in that case, but the mere dictum of such a judge of such a court would ordinarily be followed thereafter by lower courts." Brandon Mfg. Co. v. Prime, 4 Fed. Cas. 20, Case No. 1,810. The pertinent facts in the case were that a cross-bill for affirmative relief had been filed, pursuant to a previous order of the court, and by this cross-bill new parties were brought into the case, and a final decree in favor of the original complainant was rendered against them and the defendants to the original bill, and from this decree an appeal was taken to the Supreme Court. The decree was reversed, and the cause remanded to the Circuit Court, with directions to that court to dismiss the original and cross-bills, on the ground that the Circuit Court could make no decree as between the parties originally before it so as to do complete and final justice between them without affecting the rights of absent persons, whose introduction into the court, since they were citizens of the same state as complainant, would oust the jurisdiction of the court, and, on the further ground that the cross-bill brought in new parties, contrary to the rules of equity pleading and practice, the court declaring that "new parties cannot be introduced into a cause by a cross-bill." It will be observed, that either of these grounds, if tenable, required a reversal of the decree. This brief summary of the facts shows clearly, that Justice Curtis' declaration, that "new parties cannot be introduced into a cause by a cross-bill," was not "mere dictum," but a direct ruling upon one of the controlling issues of the case.

Mercantile Trust Co. v. A. & P. R. R. Co. (C. C.) 70 Fed. 518, has already been referred to in another connection, and I shall only add here that said case is in accord with Shields v. Barrow, supra. I use this affirmative form of expression that the two cases are in accord, rather than the negative statement that they do not conflict with each other, advisedly, and for the reason that, in the latter case, the decision was rested solely upon the ground that the court had possession of the mortgaged property, from which it is fairly, if not necessarily, inferable that the decision, in the absence of that fact, would have been different, and this harmonizes the two cases.

In Shields v. Barrow, Justice Curtis, in announcing the ruling of the court that it was error to bring in new parties by a cross-bill, was discussing simply a question of general equity pleading and practice, without any regard to the exception, which must necessarily arise when the court has possession of the property in litigation, while, in Mercantile Trust Co. v. A. & P. R. R. Co., the court was dealing with this precise exceptional case, and discussing, not the office of a cross-bill, or any other matter of procedure, but the jurisdiction and duties conferred and devolved upon the court by its possession of the property in litigation. Indeed, Judge Ross, in order to reach the substance of the controversy, brought before him solely through the court's possession of the mortgaged property, was insistent to brush aside any mere consideration of pleading or practice, and, therefore, referring to three foreign corporations, who were parties to the

proposed bill but were not parties to the suit brought by the Mercantile Trust Company, he said:

"Nor is there any good reason perceived why the United States Trust Company, in setting up its rights under its first mortgage in the suit of the Mercantile Trust Company, may not bring them into that suit, if it is entitled to any relief against them in connection with the mortgaged property. Whether by a cross-bill, pure and simple, or by a bill in the nature of a cross-bill, is immaterial. In such a matter mere names are nothing. Here was a property, constituting a link in a great transcontinental railway, incumbered by two mortgages for large amounts, and in such a condition as rendered it imperative on the part of the court, at the suit of the second mortgagee, to take it into its possession, and operate it by means of receivers, in order to conserve the property, and to protect the interests of all parties concerned in it. With the property thus in the possession and control of the court, at the suit of the second mortgagee the holder of the first mortgage was made a party defendant by an amended and supplemental bill, and properly so made."

While the opinion of the court quotes Judge Wheeler's criticism of Shields v. Barrow, yet it is done without words of approval, the only comment being as follows:

"The distinction referred to in the note to section 399 of Story on Equity Pleading, above cited, and in the authorities there referred to, between a cross-bill merely defensive in its character and one which seeks affirmative relief in respect to matters connected with the subject embraced by the original bill, is a very just and proper one."

And I repeat, with reference to this statement, what I have said of others, that, read in the light of the facts then before the court, it was accurate, but its use as an authority in connection with another and wholly different state of facts, is an erroneous application.

I am of opinion that the second and third objections to the cross-bill, as well as the first one, following the order in which I have arranged them, are well taken, and the demurrer and motion will be accordingly sustained and allowed.